# UNITED STATES DISTRICT COURT

for the
Western District of Kentucky
Louisville Division

| | | |
|---|---|---|
| Talonya Jones | ) | |
| *Plaintiff* | ) | |
| | ) | |
| v. | ) | Case No.  3:22-CV-531-CHB |
| | ) | |
| Javitch Block, LLC | ) | |
| *Defendant* | ) | |
| Serve: | ) | |
|     Registered Agent Solutions, Inc. | ) | |
|     828 Lane Allen Road, Suite 219 | ) | |
|     Lexington, KY 40504 | ) | |

## CLASS ACTION COMPLAINT and DEMAND FOR JURY TRIAL

### INTRODUCTION

1.      This is an individual action and proposed class action brought by Plaintiff Talonya Jones seeking actual damages, statutory damages, litigation costs and attorneys' fees on behalf of herself and of a class of similarly situated Kentucky citizen consumers for Defendant Javitch Block, LLC's violations of the Fair Debt Collection Practices Act (the "FDCPA"), 15 U.S.C. §1692 *et seq.,* which prohibits debt collectors from engaging in abusive, deceptive and unfair collection practices.

### JURISDICTION AND VENUE

2.      This Court has jurisdiction pursuant to 28 U.S.C. §1331 and the FDCPA as authorized at 15 U.S.C. §1692k(d).

3.      Venue is proper because the nucleus of relevant facts and events that affected and/or damaged Ms. Jones occurred within Jefferson County, Kentucky which is located within the Western District of Kentucky.

## PARTIES

4.      Plaintiff Talonya Jones is a natural person who resides in Jefferson County, Kentucky and a "consumer" within the meaning of the FDCPA as defined at 15 U.S.C. §1692a(3).

5.      Defendant Javitch Block, LLC ("Javitch Block") is an Ohio debt collection law firm engaged in the business of collecting debts on behalf of others, such as Velocity Investments, LLC. Javitch Block's principal place of business is located at 1100 Superior Ave, 19th Floor, Cleveland, OH 44114.

6.      Javitch Block regularly collects or attempts to collect debts owed or due or asserted to be owed or due another. Javitch Block's principal business purpose is the collection of debt. Javitch Block is a "debt collector" within the meaning of the FDCPA, as defined by 15 U.S.C. §1692a(6).

## FACTS GENERALLY

7.      On April 26, 2019, Plaintiff Talonya Jones ("Jones") entered into a Loan and Promissory Note with WebBank (the "WebBank Note"). A true and accurate copy of the WebBank Note is attached as Exhibit "A."

8.      Ms. Jones used the proceeds from the WebBank Note exclusively for personal, family, and/or household purposes, which makes the WebBank Note a "debt" within the meaning of the FDCPA.

9.       The WebBank Note was a high-cost loan with interest at 20.96% per annum and a 6% origination fee.

10.     The WebBank Note included an arbitration provision that makes arbitration administered by the Judicial Alternatives and Mediation Services ("JAMS") the exclusive forum and venue for resolving *any* dispute between the parties to the WebBank Note.

11.    Ms. Jones unfortunately defaulted on the WebBank Note.

12.    WebBank charged off the note and sold and assigned the debt to Velocity Investments, LLC ("Velocity").

13.    As WebBank's assignee, Velocity's claims against from Ms. Jones derive from WebBank's cause of action against her. *Whayne Supply Co. v. Morgan Const. Co.*, 440 S.W.2d 779, 782-83 (Ky. 1969) ("[A]n assignee such as [Velocity] acquires no greater right than was possessed by his assignor, here [WebBank], but simply stands in the shoes of the latter, subject to all equities and defenses which could have been asserted against the chose in the hands of the assignor at the time of the assignment.").

14.    Velocity retained Defendant Javitch Block, LLC ("Javitch Block") to represent it against Ms. Jones.

15.    On October 18, 2021, Javitch Block, on Velocity's behalf, sued Ms. Jones in the case of *Velocity Investments, LLC*, Jefferson Circuit Court, Division One, Case No. 21-CI-005847 (the "Velocity Lawsuit") to collect the alleged balance due on the WebBank Note.

16.    Filing the Velocity Lawsuit in court instead of filing an arbitration as expressly required by the WebBank Note provided considerable benefits to both Javitch Block and Velocity.

17.    These benefits include but are not limited to the following:

    **A.**    **Ability to Recover Costs.**

    **B.**    **Ability to Obtain a Default Judgment.**

    **C.**    **Using the Kentucky Court System as a Publicly Subsidized Collection Tool.**

    **D.**    **Use of Weaponized Discovery Requests.**

    **E.**    **Streamlined Process for Obtaining Garnishments and Judgment Liens.**

18.    **Ability to Recover Costs:** Under Kentucky statutes and court rules, a prevailing

party is entitled to recover its costs. KRS 453.040; Ky. R. Civ. P. 54.04. But the JAMS Minimum Standards for Arbitration Procedures for consumer cases expressly provides that "[w]hen [a] company is the claiming party initiating an arbitration against the consumer, the company will be required to pay all costs associated with the arbitration".[1] As to cases filed in Jefferson Circuit Court, court costs are typically around $400.00. So, by suing Ms. Jones in Jefferson Circuit Court instead of initiating an arbitration with JAMS against her, Javitch Block created liability for costs of at least $400.00 to Ms. Jones.

19.    **Ability to Obtain a Default Judgment:** Velocity is a third-party debt buyer and debt collector. Velocity files hundreds if not thousands of collection lawsuits against consumers in the Commonwealth of Kentucky alone with the main purpose of obtaining a default judgment. As explained by the Sixth Circuit Court of Appeals:

> "The most significant change in the debt collection business in recent years has been the advent and growth of debt buying." Fed. Trade Comm'n, *Collecting Consumer Debts: The Challenges of Change* at 13 (2009). Judge Kollar-Kotelly provides an overview of the debt-buying industry:
>
> > To recoup a portion of its lost investment, an originating lender may sell a charged-off consumer loan to a Debt Buyer, usually as part of a portfolio of delinquent consumer loans, for a fraction of the total amount owed to the originating lender. Once a Debt Buyer has purchased a portfolio of defaulted consumer loans, it may engage in collection efforts (or hire a third-party to do so), which may include locating borrowers, determining whether borrowers are in bankruptcy, commencing legal proceedings, or "otherwise encouraging" payment of all or a portion of the delinquency.
>
> *Debt Buyers' Ass'n v. Snow*, 481 F. Supp. 2d 1, 4 (D.D.C. 2006) (internal citations omitted). The industry has expanded rapidly. Debt buyers now pay billions of dollars to purchase tens of billions of

---

[1] "Consumer Arbitration Minimum Standards." Available online at www.jamsadr.com/consumer-minimum-standards/ (last accessed October 6, 2022).

dollars of consumer debt each year, most of it charged-off credit card debt like Stratton's. Debt buyers usually purchase bad debts in bulk portfolios, often in the form of a spreadsheet, and rarely obtain the underlying documents relating to the debt. See Fed. Trade Comm'n, The Structure and Practices of the Debt Buying Industry at ii-iii. Debt buying has attracted increasing attention from regulators. See Bureau of Consumer Fin. Prot., Debt Collection (Regulation F), 78 Fed. Reg. 67,847, 67,850 (Nov. 12, 2013) (advance notice of proposed rulemaking).

*Stratton v. Portfolio Recovery Assocs., LLC*, 770 F.3d 443, 445-446 (6th Cir.).

20.    State-court dockets across the country and the Commonwealth are awash in a deluge of debt-collection lawsuits brought by third-party debt buyers like Velocity.

21.    A recent study by Pro Publica documented the dramatic increase in these suits around the country:

> [D]ebt buyers purchase defaulted credit card accounts, typically for a few pennies on the dollar. Starting in the late 90's, the industry began a period of rapid growth and then exploded in the middle of the last decade. That led to a sharp spike in suits, many of them by smaller debt buying companies that have since gone out of business.
>
> The industry is now dominated by several large companies. The largest, Encore Capital Group, typically sues through its subsidiary, Midland Funding, LLC. In 2015, Encore collected $1.2 billion nationally from consumers, more than half of that through the courts, according to its most recent annual filing.
>
> Data from courts all over the country show the same growth of debt buyers' role in the courts, and in most courts, we found that debt buyers filed more suits than any other type of Claimant.

*So Sue Them: What We've Learned about the Debt Collection Lawsuit Machine*.[2]

22.    In analyzing data from New Jersey, the study found:

> In 1996, there were around 500 court judgments in New Jersey from suits filed by debt buyers. By 2008, that number had reached 140,000. It's dipped since then, but the change over time is obvious.

---

[2] www.propublica.org/article/so-sue-them-what-weve-learned-about-the-debt-collection-lawsuit-machine (last accessed October 6, 2022).

> Debt buyers dominate the docket in New Jersey's lower level civil court: In 2011, they accounted for 48 percent of the court judgments. And from 2001 through 2011, they obtained more than 1 million court judgments in New Jersey alone.

*Id.*

23.     One of the main tools and goals of third-party debt buyers and collectors is to use the court system to transform their junk debt into super debts. That is, debt buyers want default judgments against consumers because a judgment has a much longer and renewable statute of limitations, can be used to create a judicial lien on real property, and give debt buyers and collectors the legal right to garnish wages and bank accounts. In discussing this problem, the American Bar Association explains:

> Studies have shown that many people sued by debt buyers lose through default judgments, typically from simply not responding. When they do challenge the complaint, those without lawyers almost always lose, often because of a lack of sophistication in answering or asking questions on paper or in a face-off with a debt-collection lawyer.

> The debt-buying industry has understandably taken advantage of this and put an unprecedented burden on the nation's courts—state venues, usually small claims or others of nonrecord jurisdiction. The huge influx of debt-collection cases that started in about 2006 came at a time when the courts were beginning to face declining budgets and becoming resource-strapped. The caseloads have dropped some, but they remain much higher than before the onset of debt-buyer litigation.

*The Debt Buying Industry and Lax Court Review are Burying Defendants in Default.*[3]

24.     And the judicial fatigue is palpable:

> "It seems to me that over the years I've become less of an authentic arbiter of disputes and more a processor of paperwork," said Steven McMurry, a justice of the peace in Phoenix, Arizona, who has been

---

[3] www.abajournal.com/magazine/article/debt_buying_industry_and_lax_court_court_review_are_burying_defendants_in_default (visited July 7, 2016).

presiding over such cases since 1998. "The thing that gets me so upset, I see all these cases and I question whether there might be some valid defense."

*So Sue Them: What We've Learned about the Debt Collection Lawsuit Machine.*[4]

25.     So, Velocity helps to create the very court congestion and judicial fatigue that allows it to more easily obtain default judgments against consumers.

26.     There are no default judgments in arbitration. Even where the respondent does not defend, the claimant still has to prove its case.

27.     **Using the Kentucky Court System as a Publicly Subsidized Collection Tool:** The Kentucky Court System is not-self funded. In Kentucky,

> [t]he Judicial Branch is funded by appropriations from the General Assembly and its budget represents approximately 3.4% of the total state general funds each biennium. The budget pays for all expenses of the Kentucky Court of Justice, including salaries, court facilities, court technology, office supplies and equipment.[5]

28.     Velocity is a foreign limited liability company. It is not a Kentucky entity or taxpayer. Velocity conducts no business in the Commonwealth other than the collection of debt. Velocity offers nothing positive to Kentucky citizens. It only inflicts pain and misery on the economically weak and vulnerable. And Velocity regularly uses the tax-payer-funded court system to collect from Kentucky taxpayers and citizens. It then exports the funds it collects from Kentucky consumers out of the Commonwealth, leaving the state as a whole worse off.

29.     On the other hand, arbitration is much more expensive than use of court system.

30.     The filing fee with JAMS is $1,750 plus a 13% Case Management Fee.[6]

---

[4] *Supra* n.3.
[5] "Finance and Administration." Available online at kycourts.gov/AOC/Finance-and-Administration/Pages/default.aspx (last accessed October 6, 2022).
[6] "Arbitration Schedule of Fees and Costs." Available online at www.jamsadr.com/arbitration-fees (last accessed October 6, 2022).

31.    **Use of Weaponized Discovery:** As explained by the National Consumer Law Center:

> Debt buyers in particular may have little evidence to establish their case and little interest in obtaining the evidence. Instead, they may try to win their case using the consumer's own admissions. Along with the complaint, or shortly thereafter, the collector will send the consumer a lengthy list of statements, asking the consumer to admit to them, hoping the consumer will not respond in a timely manner.

> Failure to respond is treated as an admission to all the requested statements. The failure to respond may be treated as an admission even if the consumer denies the same facts in the consumer's answer.

> When the consumer does not respond, the collector appends its request for admissions, which are now deemed admitted, to a summary judgment motion. The collector will then seek to prevail on summary judgment without presenting its own evidence.

> By serving requests for admissions, collectors prey on unrepresented consumers' lack of legal knowledge, attempting to prove their cases by sleight of hand when they cannot do so with evidence.[7] *See also McCollough v. Johnson, Rodenburg & Lauinger, LLC,* 637 F.3d 939, 952 (9th Cir. 2011) (holding that serving requests for admission in collection action that asks the consumer-defendant "to admit facts that were not true" violates the FDCPA).

32.    In addition to the Request for Admissions, debt collectors send discovery requests with extensive interrogatory and document production requests. Again, most defendants in debt collection actions are *pro se.* The discovery process is confusing and intimidating to *pro se* defendants. Debt buyers use discovery to wear down and wear out the few consumers who actually do try to defend collection lawsuits.

33.    On the other hand, discovery is limited in arbitration. More importantly, discovery and the inevitable motion for summary judgment are not nearly insurmountable obstacles between

---

[7] Collection Actions at § 4.2.2.1 (NCLC online version accessed on October 6, 2022) (internal citations omitted).

a consumer defendant and arguing her case and defense in front of arbitrator. Any litigant, especially a *pro se* litigant is much more likely to be able to personally explain her defenses to an arbitrator than she is to a judge in court. In court, the rules of discovery and evidence weigh heavily in favor of litigation savvy debt collectors like Velocity and against *pro se* defendants who often have little or no legal experience or knowledge.

34.    **Streamlined Process for Obtaining Garnishments and Judgment Liens:** Ten days after entry judgment in a court action, a judgment creditor can immediately serve wage and bank garnishments and file judgment liens. But with an arbitration award, the prevailing party has the option of applying to a court for entry of judgment confirming the award. So, arbitration allows the respondent to defend without the risk of judgment being entered against her a result of an adverse decision. A loss in an arbitration does not result in an automatic negative public record being entered against the respondent. After a loss, the respondent has the opportunity to pay off or settle the arbitration award before entry of a judgment and an adverse public record that could hurt the respondent's credit score and ability to obtain credit.

35.    As can be seen, the advantages that flow to a debt collector like Velocity from filing suit in court instead of filing an arbitration result in serious disadvantages to the consumer defendant. On the flip side, many of the negative consequences that a debt collector like Velocity suffers in arbitration benefit the consumer respondent, especially a *pro se* consumer.

36.    In order to reap the benefits of filing in court and to avoid the additional costs and expenses of arbitration, Javitch Block filed the Velocity Lawsuit on Velocity's behalf in direct contravention of the WebBank Note's arbitration clause, which plainly provides that *any dispute* between the parties to the WebBank Note "*shall be resolved <u>exclusively</u>* by arbitration." Exhibit "A" (emphasis and underlining added).

37.     After Javitch Block on Velocity's behalf filed suit against her, Ms. Jones obtained counsel to defend her.

38.     Counsel filed an answer to Velocity's complaint on March 8, 2022.

39.     About two weeks later, Javitch Block on Velocity's behalf, served discovery requests on Ms. Jones, serving same on counsel.

40.     On April 15, 2022, Ms. Jones by counsel moved the Jefferson Circuit Court to compel Velocity to arbitrate its claims against her.

41.     Rather than dismissing the case and initiating an arbitration with JAMS, Javitch Block on Velocity's behalf filed a response to the motion compel. In its response, Javitch Block moved the Jefferson Circuit Court to enter an order requiring Ms. Jones to file Velocity's complaint as an arbitration proceeding against herself.

42.     After hearing arguments of the parties, the Jefferson Circuit Court entered an order requiring Velocity to arbitrate its claims against Ms. Jones.

43.     Javitch Block violated the FDCPA by filing the Velocity Lawsuit on Velocity's behalf in Jefferson Circuit Court against Ms. Jones to collect the alleged balance due on the WebBank Note where the plain terms of the WebBank Note provides that arbitration with JAMS is the exclusive and only available venue and forum to resolve disputes between the parties. This action denied Ms. Jones many of the important protections provided to her by the arbitration clause and unfairly shifted potential liability for costs from Velocity to Ms. Jones.

44.     Javitch Block violated the FDCPA by moving the Jefferson Circuit Court on Velocity's behalf to enter an order requiring Ms. Jones to initiate an arbitration against herself.

## **CLASS ALLEGATIONS**

45.     Plaintiff Talonya Jones brings this action individually and as a proposed class

action on behalf of all similarly situated United States consumers comprised of the following class

of persons:

> All consumers against whom Javitch Block, LLC and/or his agents,
> employees or representatives, within one (1) year prior to the date
> of the filing of this complaint, filed a collection against the consumer
> in state or federal court on behalf of Javitch Block's client in an
> attempt to collect a debt within the meaning of the FDCPA <u>and</u> the
> underlying debt at issue in the collection lawsuit filed by Javitch
> Block made arbitration the exclusive forum and venue for resolving
> disputes between the parties to the debt.

46.     This action seeks actual damages and the maximum statutory damages under the

FDCPA pursuant to 15 U.S.C. § 1692k(a)(2) for Ms. Jones and all members of the proposed Class

for Javitch Block, LLC's violations of the FDCPA.

47.     The proposed Class as set out *supra* which is represented by Talonya Jones in this

proposed class action and of which she herself is a member consists of those persons as defined

*supra* and which the members of the proposed Class are so numerous that joinder of individual

members is impracticable.

48.     Talonya Jones's claims in this proposed class action are typical of the claims of the

proposed Class as set out *supra*.

49.     There are common questions of law and fact applicable to the members of the

proposed Class in this proposed class action that relate to and affect the rights of each member of

the proposed Class.

50.     The relief sought for Talonya Jones is common to the members of the proposed

classes and all members of the proposed Class have the same issues of law in common: (1) whether

Javitch Block violated the FDCPA by filing suit in state or federal court on behalf of one of its

clients to collect a defaulted debt where under the plain terms of the debt at issue make arbitration

the exclusive venue and forum for resolving disputes between the parties to the underlying debt.

51.     There is no known conflict between Plaintiff and any other members of the proposed Class with respect to this action or with respect to the claims for relief herein set forth.

52.     Plaintiff is the representative party for the proposed Class and is able to, and will, fairly and adequately protect the interest of each of the proposed Class.

53.     Plaintiff's attorneys are experienced and capable in the field of consumer rights, including FDCPA violations.

54.     Plaintiff's attorneys have successfully represented other claimants in similar class action litigation.

55.     The action is properly maintained as a class action in that the prosecution of separate actions by individual members of the proposed Class would create a risk that individual adjudications could be dispositive of the interests of other members not a party to such adjudication or could substantially impair or impede their ability to protect their interest.

56.     This action is properly maintained as a class action because the prosecution of separate actions by individual members of the proposed Class would create risk of varying individual adjudications, which would establish incompatible standards of conduct for Defendant.

57.     This action is properly maintained as a class action inasmuch as the questions of law and fact common to the proposed class members predominate over any questions affecting only individual members; a class action is superior to other methods available for the efficient adjudication of the controversy; the relief sought by all members of the proposed Class will be effective and appropriate for the entirety of each proposed class; and all members of the proposed Class have a right to damages or other relief that may be readily computed in each case or otherwise readily determined.

58.     The identity of each individual member of the proposed Class can be ascertained

from the books and records maintained by Defendant.

59.    Because many of the persons who comprise the proposed Class in this case may

not be aware of their rights, or may not be in a financial position to readily assert their rights, and

because relegation of their claims to individual actions would result in an unreasonable multiplicity

of suits and a corresponding burden on this and other courts, a class action is far superior to all

other methods for a fair and efficient adjudication of this controversy.

## CLAIMS FOR RELIEF

### Violations of the Fair Debt Collection Practices Act

60.    The above acts and omissions of Defendant Javitch Block, LLC ("Javitch Block")

constitute violations of the Fair Debt Collection Practices Act, which violations each created a

material risk of harm to the interests recognized by Congress in enacting the FDCPA.

61.    Javitch Block's violations of the FDCPA include but are not limited to the

following:

**A.    Violation of 15 U.S.C. § 1692e(A)(2):** Javitch Block implicitly represented to Ms. Jones and the Jefferson Circuit Court that the WebBank Note permitted filing suit to adjudicate disputes to the parties to the WebBank Note by filing the Velocity Lawsuit against Ms. Jones in Jefferson Circuit Court.

**B.    Violation of 15 U.S.C. § 1692e(5):** Javitch Block took an action that cannot be legally taken in the attempt to collect the alleged defaulted WebBank Note debt from Ms. Jones by **(i)** filing the Velocity Lawsuit on Velocity's behalf in Jefferson Circuit Court where the WebBank Note made arbitration with JAMS that sole and exclusive jurisdiction and venue to resolve disputes between the parties to the WebBank Note; and **(ii)** by moving the Jefferson Circuit Court to enter an order requiring Ms. Jones to initiate an arbitration against herself.

**C.    Violation of 15 U.S.C. § 1692e(10):** Javitch Block used false representations and deceptive means to collect or attempt to collect the balance of the WebBank Note, by falsely representing that its client Velocity had the legal right to sue Ms. Jones in Jefferson Circuit Court to collect the alleged balance due on the WebBank Note.

**D.    Violation of 15 U.S.C. § 1692f(1):** Javitch Block attempted to shift

-13-

the responsibility for payment of court costs from its client Velocity by suing Ms. Jones in Jefferson Circuit Court instead of initiating an arbitration against her with JAMS as required by the plain terms of the WebBank Note.

**E.** **Violation of 15 U.S.C. § 1692e and 15 U.S.C. § 1692f:** Javitch Block used used unfair and unconscionable means to collect a debt from Ms. Jones by **(i)** filing suit on Velocity's behalf in Jefferson Circuit Court where the WebBank Note made arbitration with JAMS the sole and exclusive jurisdiction and venue to resolve disputes between the parties to the WebBank Note; and **(ii)** by moving the Jefferson Circuit Court to enter an order requiring Ms. Jones to initiate an arbitration against herself.

62. Ms. Jones is entitled to recover her actual damages, statutory damages, costs, and reasonable attorney's fees from Javitch Block for the above violations of the FDCPA.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Talonya Jones on behalf of herself and as class representative on behalf of the proposed Class requests that the Court grant relief as follows:

a. Award actual damages to Ms. Jones and to each member of the proposed Class for Defendant Javitch Block, LLC's violations of the FDCPA under 15 U.S.C. §1692k;

b. Award maximum statutory damages to Ms. Jones and to each member of the proposed Class for Defendant Javitch Block, LLC's violation of the FDCPA under 15 U.S.C. §1692k;

c. Award Plaintiff and all members of the proposed Class their attorney's fees, litigation expenses and costs in prosecuting this action as provided by the FDCPA under 15 U.S.C. 1692k;

d. Trial by jury; and

-14-

    e.      Such other relief as may be just and proper.

Submitted by:

/s/ James R. McKenzie
James R. McKenzie
*James R. McKenzie Attorney, PLLC*
115 S. Sherrin Avenue, Suite 5
Louisville, KY 40207
Tel:    (502) 371-2179
Fax:    (502) 257-7309
jmckenzie@jmckenzielaw.com

James H. Lawson
*Lawson at Law, PLLC*
P.O. Box 1286
Shelbyville, KY 40066
Tel:    (502) 473-6525
Fax:    (502) 473-6561
james@kyconsumerlaw.com